IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| POOLE HUFFMAN, LLC, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION FILE |
| ) | NO. 1:20-CV-00150-JPB |
| v. ) | |
| ) | |
| ARYEH KIEFFER, ADDISON CAPITAL, ) | |
| LLC, ADDISON ADVISORS, LLC, IA ) | |
| DARON VILLAGE, LLC, IA MOUNT ) | |
| VERNON, LLC, IA WEST GATE, LLC, ) | |
| IA ONE INVESTORS, LLC, IA ONE ) | |
| MANAGER, LLC, IA TWO INVESTORS, ) | |
| LLC, and IA TWO MANAGER, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## IA DEFENDANTS' RESPONSE IN OPPOSITION OF PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

COME NOW, IA DARON VILLAGE, LLC, IA MOUNT VERNON, LLC, IA WEST GATE, LLC, IA ONE INVESTORS, LLC, IA ONE MANAGER, LLC, IA TWO INVESTORS, LLC and IA TWO MANAGER, LLC (the "IA Defendants"), by and through undersigned counsel, and hereby file the IA Defendants' Response in Opposition of Plaintiff's Motion to Enforce Settlement Agreement, showing the Court the following:

## Introduction

Poole Huffman, LLC ("Plaintiff"), Aryeh Kieffer, Addison Capital, LLC, Addison Advisors, Inc. and the IA Defendants (collectively, the "Parties") were on the cusp of finalizing a settlement agreement by which the IA Defendants would essentially take over the obligations of Aryeh Kieffer, Addison Capital, LLC, and Addison Advisors, Inc. (the "Addison Parties") in return for an assignment of Plaintiff's Attorneys' Fee Judgment, as defined in the Complaint [Doc. 1.1, ¶ 20], against the Addison Parties. Negotiations included changing dates for payment, and would likely have resulted in a final executed settlement if Plaintiff had not decided to reach beyond the IA Defendants' tolerance and demand a consent judgment for $50,000 more than the then-offered settlement amount.

The IA Defendants are in the business of owning and operating commercial real estate when timing is far from certain, loans are being declined or delayed, sales are being cancelled and risks must be assessed differently than before Covid-19 brought the country to a near standstill. Exhibit 6, ¶¶ 3-4. Plaintiff's unjustified lawsuit against the IA Defendants has further halted refinancing and management of their properties. Id., at ¶ 5.

Plaintiff had no relationship with the IA Defendants and provided no legal services to them. Id., at ¶ 6. The IA Defendants' motivation for settlement was to

free up properties even though they believed the claims by Plaintiff were spurious. Id., at ¶ 7. At every turn, Plaintiff was advised that the IA Defendants were trying to be tolerant of Plaintiff's extreme position, demanding first $250,000, then $235,000, and, after collecting on one of its judgements, $190,000. Id., at ¶ 8. Plaintiff was seeking essentially full payment. Id.

Despite this relentless insistence on excessively high settlement amounts from Plaintiff, the IA Defendants were faced with the dilemma of potentially spending resolving the current litigation, which is preventing refinancing of properties valued in the million or settling the lawsuit at such a high price. Id., at ¶ 9. Now, Plaintiff has filed *lis pendens* on real estate, which it has no legal right to encumber (the dispute is over membership interests in limited liability companies that do not hold title to these properties). A Motion to Cancel Lis Pendens is being filed concurrently herewith.

In the end, settlement did not occur for one reason: Plaintiff insisted on a judgment in the amount of $235,000, if settlement payment was not made. In a last-ditch effort to save negotiations between the IA Defendants and Plaintiff, the IA Defendants even offered the voracious Plaintiff judgment in the amount of the proposed settlement, which was flatly rejected by an email which simply said "Nope. I'm not going to do that", thus, ending negotiations which had almost matured to a

3

complete resolution. Uncertain that the settlement could actually be funded with the evolving crisis, that was simply too much of a risk for the IA Defendants and those negotiations ended. Despite all this, the settlement negotiations required the consent of the Addison Parties, which had not been obtained by either the IA Defendants or Plaintiff. Indeed, Plaintiff does not appear to have negotiated at all with the Addison Parties.

I.   **FACTUAL SUMMARY.**

In this lawsuit, Plaintiff is ultimately pursuing the collection of an Attorneys' Fees Judgment against the Addison Parties, to whom it provided services in the past. At all times relevant hereto, Scott McAlpine and the law firm Knight Palmer represent the Addison Parties; Kevin Ward, Zack Zimmerman, Megan Naioti, and the law firm Schulten Ward Turner and Weiss, LLP represent the IA Defendants; and Plaintiff is *pro se* with Jon David Huffman and Scott McMahan as its representatives. [Doc.'s 5 and 6].

In February 2020, when counsel for the IA Defendants reinitiated settlement discussions[1], Plaintiff's co-counsel, Scott McMahan, stepped in to lead negotiations with the IA Defendants' counsel on behalf of Plaintiff, stating that "Jon David has

---

[1] IA Defendants first initiated settlement discussions in a phone call in October 2019. These stopped abruptly and almost immediately due to the unwavering demand for $235,000.

asked me to take over as the point person on these negotiations. The matter is a little too personal to him and he is hoping for outside perspective." February 19, 2020 email, attached hereto as **Exhibit "1"**. On February 17, 2020, counsel for the IA Defendants sought to advance the negotiation with an offer that the IA Defendants would pay Plaintiff $125,000 (up from $75,000) if Plaintiff would assign the Attorneys' Fee Judgment to Richie Wolfe, a member of the IA Defendants. Id. at p. 2. Over the course of the next two days, Plaintiff insisted on essentially full payment, taking into account the amounts already collected against the Addison Parties. Id. On February 19, 2020, counsel for the IA Defendants emailed regarding Plaintiff's offer of settling the case for a payment of $185,000 from the IA Defendants to Plaintiff ("February Offer") to his clients and required additional time to contemplate the offer. See February Offer attached hereto as **Exhibit "2"**. On February 25, 2020, counsel for the IA Defendants were prepared to counteroffer the amount of $185,000, but providing additional terms were acceptable, including (i) dismissal with prejudice of this lawsuit; (ii) payment from the IA Defendants to Plaintiff in the amount of $185,000 within 30 days or upon closing of a sale or refinance of real estate owned by the IA Defendants, whichever occurs first; and (iii) cooperation from all Parties in providing the title company for the sale or refinance with the necessary releases and dismissals to close ("February Counteroffer"). See

February Counteroffer, attached hereto as **Exhibit "3"**. Counsel for the IA Defendants had previously informed Plaintiff that the IA Defendants would fund the settlement from a sale or refinance of one or more of their properties. See Exhibit 1. Plaintiff generally responded "[t]hat sounds good. If you want to get me whatever you need signed, I'll make sure it happens." See Motion, Exhibit A (Plaintiff's email response to the February Counteroffer).

Thereafter, Plaintiff took action inconsistent with settlement discussed in the February Counteroffer by filing two *lis pendens* that operate as a cloud on title to the IA Defendants' real estate. On April 17, 2020, Plaintiff filed a *lis pendens* on IA West Gate, LLC's ("IA West Gate") property located at 5030 W. Mountain Street, Stone Mountain, Georgia 30083 ("West Gate"). A certified copy of the West Gate *lis pendens*, Book 2303, Page 207, DeKalb County, Georgia Lien Book, attached hereto as **Exhibit "4"**. Also on April 17, 2020, Plaintiff filed a second lis pendens, this time on IA Daron Village, LLC's ("IA Daron Village") property located at 62 Harwell Road NW, Atlanta, Georgia 30311 ("Daron Village"), inhibiting the refinance of this property as well.[2] A certified copy of the Daron Village *lis pendens*,

---

[2] The IA Defendants dispute the validity of the *lis pendens* on West Gate and Daron Village and are filing their Motion to Cancel *Lis Pendens* contemporaneously herewith and incorporate the facts and arguments set forth therein as if fully restated herein.

6

Book 4861, Page 650, Fulton County, Georgia Lien Book, attached hereto as **Exhibit "5"**. No notice of either *lis pendens* was filed in this lawsuit. Financing and development of the encumbered properties has been severely hampered by the liens. See Affidavit of Richard Wolfe ("Wolfe Aff."), attached hereto as **Exhibit "6"**, ¶ 5.

On March 26, 2020, counsel for the IA Defendants contacted Plaintiff to discuss the negotiations and proposed a couple changes to the terms based on new and evolving circumstances. See March 26, 2020 email, attached hereto as **Exhibit "7"**, p. 2. Because of the ongoing negotiations between the Parties and the Covid-19 global pandemic, the refinance of Daron Village was delayed, and the IA Defendants suggested an extension of the payment period of 30 additional days from March 26, 2020 as well an extension of the deadline for the remaining defendants[3] to respond to the Complaint. Id. Plaintiff considered the changes, and counsel for the IA Defendants circulated a draft settlement agreement to the Parties that day, compiling all of the terms discussed from the February Counteroffer to present. See Second March 26, 2020 email, attached hereto as **Exhibit "8"**.

---

[3] On January 17, 2020, defendants Aryeh Kieffer, IA One Investors, LLC, and IA One Manager, LLC filed in their answers [Doc.'s 3 and 4]. Defendants Addison Capital, LLC, Addison Advisors Inc., IA Daron Village, LLC, IA Mount Vernon, LLC, IA West Gate, LLC, IA Two Investors, LLC, and IA Two Manager, LLC were originally required to respond to the Complaint [Doc. 1.1] on or before April 13, 2020.

On April 10, 2020, Plaintiff responded to the February Counteroffer with a new counteroffer, including a new, material conditions to acceptance ("April Counteroffer"). See April Counteroffer, attached hereto as **Exhibit "9"**. Plaintiff now sought to obtain an executed consent judgment in the amount of $235,000 against all Defendants if the IA Defendants failed to pay the settlement amount within the 30 day time-period, and stating, "[h]opefully these changes will not be controversial." Id. They were. Plaintiff's additional term seeking a consent judgment for an amount $50,000 greater than the settlement amount as a condition to acceptance, when Plaintiff is aware of the delicate timing of funding that has been delayed by negotiations with Plaintiff and the Covid-19 crisis. Id. Then, seven days later, Plaintiff filed the *lis pendens* on West Gate and Daron Village. See Exhibits 4 and 5.

Nevertheless, on April 29, 2020, counsel for the IA Defendants responded to the Plaintiff's April Counteroffer that they would accept a consent judgment provision if Plaintiff agrees to extend the payment period from 30 to 60 days, emphasizing that the Covid-19 crisis has significantly impacted the IA Defendants' ability to close any sale or refinance of their properties. April 29, 2020 email, attached hereto as **Exhibit "10"**, p. 2. Plaintiff sought clarification that the consent judgment would be for $235,000, to which, the IA Defendants' counsel responded

8

that they could only agree to a settlement with a consent judgment for $185,000. Id. The IA Defendants' counsel reiterated that the IA Defendants are funding settlement for a judgment against the Addison Parties, unrelated to the IA Defendants for work done by Plaintiff for the Addison Parties. Id., at p. 1. Plaintiff has never had a relationship with the IA Defendants other than an adversarial one. Within minutes, Plaintiff rejected the counteroffer, stating, "Nope. I'm not going to do that." Id. At this point, all negotiations broke down completely. On May 4, 2020, Plaintiff filed the Motion.

## II. STANDARD OF REVIEW.

District Courts have discretion to rule on motions to enforce settlement agreements. See R.A.M., LLC v. Hill, 393 Fed. Appx. 684, 686 (11th Cir. 2010). The issues raised in a motion to enforce a settlement agreement are analogous to a motion for summary judgment. See Albert v. American Family Ins. Co., 1:14-CV-11112-ELR-JKL, 2017 WL 5380588, at * 2 (N.D. Ga. Jan. 9, 2017), affirmed in part, 739 Fed. Appx. 607, 609-10 (11th Cir. 2018). And so, in ruling on a motion to enforce a settlement, the district court looks to "documents, affidavits, depositions and other evidence in the record, like a motion for summary judgment, to determine whether there is a genuine dispute of material fact." Id. Movant bears the burden of showing that there is no genuine issue of fact regarding the existence and

9

enforceability of the settlement agreement. Id. The evidence presented by movant is viewed in a light most favorable to the nonmoving party, and "the Court must draw all disputed factual inferences in the light most favorable to the non-moving party." Atlanta Fiberglass USA, LLC v. KP, Co., Ltd., 1:11-CV-4367-RWS, 2013 WL 4786912, at *5 (N.D. Ga. Sept. 6, 2013)(internal quotation omitted). Plaintiff has failed to establish a binding, enforceable settlement agreement between the Parties as a matter of law, such that the Motion stands to be denied. Plaintiff's statement that "Nope. I'm not going to do that" in his final email is clear evidence of a breakdown in negotiations.

### III.   ARGUMENT AND CITATION TO AUTHORITY.

The Parties never concluded negotiation and reached a binding, enforceable settlement agreement. Under Georgia law, a settlement agreement is a contract and must meet contract formation and enforceability requirements. Lamb v. Fulton-DeKalb Hosp. Authority, 297 Ga. App. 529, 533, 677 S.E.2d 328, 333 (2009). Settlement agreements are interpreted under the law of the forum state. Schwartz v. Fla. Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987). Until there is a meeting of the minds as to the "definite, certain, and unambiguous" terms, a settlement agreement will not be enforced. Odham v. Self, 279 Ga. App. 703, 707, 632 S.E.2d 446, 449 (2006). Whether a settlement agreement is enforceable is a question of law

for the court to decide. Auto-Owners Inc. Co. v. Crawford, 240 Ga. App. 748, 749, 525 S.E.2d 118, 120 (1999)(court determined that the minds of the parties did not meet at the same time, upon the same subject matter, and in the same sense)(internal quotation omitted). "In considering the enforceability of an alleged settlement agreement, however, the court is obviously limited to those terms upon which the parties themselves have mutually agreed." Imerys Clays, Inc. v. Washington County Bd. Of Tax Assessors, 287 Ga. App. 674, 675, 652 S.E.2d 580, 582 (2007). "It is the duty of the courts to construe and enforce contracts as made, and not to make them for the parties." Id.

Parties reach a meeting of the minds when one party makes an offer and the other parties accept <u>all</u> of the essential terms within the offer. See O.C.G.A. § 13-3-2 (emphasis added). An acceptance must be "unconditional, unequivocal, and without variance of any sort." Lamb v. Decatur Fed. Sav. & Assn., 201 Ga. App. 583, 585 411 S.E.2d 527 (1991). A purported acceptance is insufficient when, as here, the party seeks further negotiation of an essential term within its purported acceptance. Yim v. Carr, 349 Ga. App. 892, 907, 827 S.E.2d 685, 697 (2019)(the request for continued negotiation over the essential term did not constitute an unconditional and unequivocal acceptance of the settlement offer). Ultimately, to reach a binding settlement, all parties involved must reach a meeting of the minds as

11

to all of the essential terms at the same time. Kitchens v. Ezell, 315 Ga. App. 444, 451, 726 S.E.2d 461, 467 (2012). A global settlement agreement cannot be severed into enforceable and unenforceable provisions; it will be upheld or struck down in its entirety. See Imerman v. London, 255 Ga. App. 140, 141, 564 S.E.2d 544, 546 (2002). Thus, the failure of all parties to unconditionally and unequivocally accept a party's offer is insufficient as a matter of law to proving a meetings of the minds that would give rise to a global settlement. Id.; Yim, 349 Ga. App. at 907.

A purported acceptance of a settlement offer which requires an additional act necessary to acceptance of an offer is construed as a counteroffer. Frickey v. Jones, 280 Ga. 573, 575, 630 S.E.2d 374, 376 (2006); see e.g., Torres v. Elkin, 317 Ga. App. 135, 143, 730 S.E.2d 518, 524 (2012)(language stating, "I trust that your office will satisfy any liens arising out of this matter," imposed condition, constituting a counteroffer); Kemper v. Brown, 325 Ga. App. 806, 808, 754 S.E.2d 141, 143 (2014)(acceptance that contained condition that settlement funds be placed into escrow constitutes a counteroffer); Anderson v. Benton, 295 Ga. App. 851, 855, 673 S.E.2d 338, 341 (2009)(response letter specifically contingent upon signing a full release of any and all claims constituted counteroffer).

4835-4054-8799, v. 1

### A.      The Parties Did Not Reach A Meeting Of The Minds As To The IA Defendants' February Counteroffer.

Here, Plaintiff has failed to establish that the Parties unquestionably reached a meeting of the minds. Counsel for the IA Defendants responded to Plaintiff's February Offer with the February Counteroffer. The February Offer consisted of a single term of the IA Defendants paying Plaintiff a settlement amount of $185,000 in exchange for a dismissal of the lawsuit. See Exhibit 2. The IA Defendants' February Counteroffer did not accept the February Offer, but rather, required acceptance of terms additional by Plaintiff and the Addison Parties necessary to acceptance. Frickey, 280 Ga. at 575; Exhibit 3 ("… assigning of the underlying judgment to Richie Wolf. Payment would occur in 30 days or upon closing of the current refinancing, whichever first occurs, and the parties will need to cooperate in providing the title company with appropriate release and dismissals to provide insurable title and effect the settlement.").

The IA Defendants' conditions are more than mere requests for confirmation or recommendations; they are material provisions, which the IA Defendants conveyed were necessary to reaching a settlement. An imposed condition rendering the acceptance of a counteroffer amounts to more than precatory words. See McReynolds v. Krebs, 290 Ga. 850, 863-54, 725 S.E.2d 584, 588 (2012)(holding that a mere request for confirmation regarding the existence of liens will not

13

transform a purported acceptance into a counteroffer, but adding condition involving resolution of liens will). "Precatory words are words whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction." Herring v. Dunning, 213 Ga. App. 695, 699, 446 S.E.2d 199 (1994)(holding that language stating defense counsel's "understanding that no liens of any kind exist in this case. Please confirm this at your earliest convenience" are precatory words). The February Counteroffer contains conditions that would enable the IA Defendants to refinance or sell real estate belonging to them in order to fund any settlement amount.

Plaintiff contends in its Motion that it accepted the February Counteroffer the next day, creating a binding agreement. See Motion, Exhibit A. This is erroneous for two reason. First, *assuming arguendo*, that Plaintiff's response amounted to an acceptance, Plaintiff revoked acceptance prior to executing any settlement documents when it made the April Counteroffer. See *infra, Section B;* Newcomer v. Newcomer, 278 Ga. 776, 777, 606 S.E.2d 238, 239 (2004)(the material alteration of a settlement document before signing creates a counteroffer). Second, for there to be any settlement, the Addison Parties were required to accept the February Counteroffer as well. Counsel for the IA Defendants do not represent the Addison Parties and could only make an offer on behalf of their clients. An attorney cannot

14

offer or accept a settlement on behalf of parties that are not his client. <u>Patel v. Patel</u>, 327 Ga. App. 733, 736, 761 S.E.2d 129, 133 (2014). Similarly, the IA Defendants' counsel only represents the IA Defendants, not the Addison Parties. Therefore, because the Addison Parties still needed to accept the February Counteroffer, the Parties did not reach a meeting of the minds that would bind all Parties to a global settlement agreement. Therefore, construing the evidence in favor of Defendants, Plaintiff failed to establish that there is no question of material fact that the Parties reached a meeting of the minds as to the essential terms of the February Counteroffer. Finally, the Parties clearly anticipated that the terms of the settlement agreement would be reduced to writing and executed by all the Parties that never accepted.

**B.   The April Counteroffer Rejected The February Counteroffer. "Nope. I'm not going to do that."**

Plaintiff failed to provide any evidence that it and the Addison Parties unequivocally accepted the February Counteroffer. It is genuinely disputed that Plaintiff accepted the February Counteroffer. In the Motion, Plaintiff crops out the communications between Plaintiff and the IA Defendants to show that Plaintiff accepted it. <u>See</u> Motion, Exhibit A. However, the complete record evidence reveals that even after the February Counteroffer, the Parties continued to discuss new and changed terms.

15

Counsel for the IA Defendants compiled all the discussed terms into a draft settlement agreement for the Parties to review and finalize prior to executing a binding settlement agreement. Before any such writing was finalized and circulated for execution, Plaintiff rejected the February Counteroffer by making the new April Counteroffer. Plaintiff added a new material condition that Defendants agree to a consent judgment against all Defendants in the amount of $235,000, should the IA Defendants fail to pay the settlement amount of $185,000 on or before April 30, 2020. Plaintiff's proposal was punitive and unacceptance, and a consent judgment for $50,000 more than the settlement amount was more than the IA Defendants would accept. Plaintiff understood that the settlement funds would come from a refinance of one of the IA Defendants' property, but then acted as a barrier to the IA Defendants' access to settlement funds while also crippling their inability to access funding for the settlement amount by filing *lis pendens*. By stating that "[h]opefully these changes will not be controversial," Plaintiff clearly recognized that a new condition that Defendants were required to satisfy had been added, and the negotiations were still ongoing.

Counsel for the IA Defendants conditioned an acceptance of the April Counteroffer upon a change in material terms, amounting to another counteroffer. McReynolds, 290 Ga. at 863-54. Given the gross impacts of Covid-19, counsel for

4835-4054-8799, v. 1

the IA Defendants required the payment period to be changed from 30 days to 60 days. See Exhibit 10. When counsel for the IA Defendants told Plaintiff that any consent judgment would need to be for $185,000, not $235,000, Plaintiff responded within minutes, "Nope. I'm not going to do that." Id. This was a clear and unequivocal rejection of the IA Defendants' most recent counteroffer. This is the point at which the negotiations finally broke down.

Furthermore, the parties never reached a meeting of the minds and global settlement because the Addison Parties never accepted the discussed material terms. The record is devoid of any evidence that the Addison Parties agreed to any aspect of the settlement negotiations, and it cannot now create an enforceable agreement by ignoring the Addison Parties' silence in a global settlement. Because the Addison Parties assent was a mandatory condition and they never accepted the February Counteroffer or the April Counteroffer, the Parties never reached a binding settlement agreement as a matter of law.

Plaintiff's entire Motion seeks to enforce the February Counteroffer. However, this counteroffer is unenforceable as a matter of law. A counteroffer is a rejection of the offer and terminates the power of acceptance. Decatur Federal Sav. & Loan Ass'n, 201 Ga. App. at 585. "An offer, when once rejected, loses its legal force and cannot be accepted thereafter so as to create a binding agreement unless it

is renewed after the rejection by the original offeror." Id. Plaintiff rejected the February Counteroffer and terminated its power to accept it when Plaintiff made the April Counteroffer. The IA Defendants never renewed the February Counteroffer, so Plaintiff cannot now choose to accept it. It is improper for Plaintiff to ask the Court to enforce an alleged settlement agreement that operates as a final disposition of the case, when Plaintiff explicitly, previously rejected the terms. Plaintiff cannot go back in time and unwind its rejection. Because Plaintiff has failed to meet its burden of establishing that no genuine issue of material fact exists as to the formation and enforceability of any settlement agreement between the Parties, Plaintiff's Motion stands to be denied.

**WHEREFORE**, the IA Defendants respectfully request that the Court **DENY** Plaintiff's Motion to Enforce Settlement Agreement.

Respectfully submitted, this 8th day of June, 2020.

        **SCHULTEN WARD TURNER & WEISS, LLP**

        */s/ J. Zachary Zimmerman*
        Kevin L. Ward, Georgia Bar No. 737020
        J. Zachary Zimmerman, Georgia Bar No. 785135
        Megan E. Naioti, Georgia Bar No. 128253
        *Counsel for IA Daron Village, LLC, IA West Gate, LLC, IA One Investors, LLC, IA One Manager, LLC, IA Two Investors, LLC, and IA Two Manager, LLC*

260 Peachtree Street, N.W., Suite 2700
Atlanta, Georgia 30303
404-688-6800 (Phone)
404-688-6840 (Facsimile)
k.ward@swtwlaw.com
z.zimmerman@swtwlaw.com
m.naioti@swtwlaw.com

4835-4054-8799, v. 1

# CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that this filing complies with the requirements of Local Rule 5.1C (Times New Roman, 14 point) and that I have this day served a true and correct copy of the above and foregoing **IA Defendants' Response in Opposition of Plaintiff's Motion to Enforce Settlement Agreement** upon counsel of record by CM/ECF which will cause a copy to be served electronically upon:

Jon David W. Huffman, Esq.
Timothy J. Guilmette, Esq.
Poole Huffman, LLC
3562 Habersham at Northlake
Building J, Suite 200
Tucker, Georgia 30087
jondavid@poolehuffman.com
tim@poolehuffman.com
*Counsel for Plaintiff*

So certified, this 8th day of June, 2020.

**SCHULTEN WARD TURENR & WEISS, LLP**

*/s/ J. Zachary Zimmerman*
J. Zachary Zimmerman, Georgia Bar No. 785135
*Counsel for IA Daron Village, LLC, IA Mount Vernon, LLC, IA West Gate, LLC, IA One Investors, LLC, IA One Manager, LLC, IA Two Investors, LLC, and IA Two Manager, LLC*

260 Peachtree Street, N.W., Suite 2700
Atlanta, Georgia 30303
404-688-6800 (Phone)
404-688-6840 (Facsimile)
z.zimmerman@swtwlaw.com

4835-4054-8799, v. 1